UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

------------------------------------

ANDRE WATERS,

                    Plaintiff,

    v.

AMERICAN SPIRALWELD PIPE COMPANY, LLC
                    Defendant.

------------------------------------

CIVIL ACTION NO. 4:25-cv-1106

COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff ANDRE WATERS ("Plaintiff"), on behalf of himself, by and through his attorneys Valli Kane & Vagnini LLP and Ellwanger Henderson LLLP, brings this action for damages and other legal and equitable relief against Defendant AMERICAN SPIRALWELD PIPE COMPANY, LLC ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §§ 1981 *et seq.* ("Section 1981"), and the Texas Commission on Human Rights Act, as amended, Tex. Lab. Code §§ 21.001 *et seq.* ("TCHRA") and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Plaintiff is Black, and has worked for Defendant, a pipe manufacturing company, since April 2022. Throughout his employment, he has endured White employees liberally using the word "nigger." Defendant's supervisors, who were White, also made racial jokes and comments to Plaintiff on the worksite. He also witnessed White employees throw a rope over another Black employee, as if it were a hangman's noose, and yell: "You got you one, boy." When Plaintiff complained to human resources about racial slurs and the hangman's noose incident, Defendant intimidated him into retracting his statement. Defendant failed or refused to address the

racial harassment that festered among the workforce. Consequently, on March 26, 2025, Plaintiff arrived at work to find the work locker that was assigned to him had been vandalized:



2. Plaintiff is entitled to recover compensatory damages and other economic damages, punitive damages, attorneys' fees, and costs.

## THE PARTIES

3. Plaintiff is Black. He has been Defendant's employee since around April 2022. He has worked as a Bagger in Defendant's Logistics and Shipping Department and more recently has worked in Defendant's the Selections Department.

4. Defendant is a pipe manufacturing company incorporated in South Carolina. Upon information and belief, Defendant operates nationally and has its Southwest Operations facility located at 2700 J. Eagan St in Paris, Texas, where Plaintiff works. Upon information and belief, Defendant employs over 500 employees and is engaged in interstate commerce.

5. During all relevant times, Defendant is an employer covered by Title VII, § 1981, and the TCHRA.

6. Defendant transacted and continues to transact business in Texas by, among other things, employing workers at its facility located within Texas and within this judicial district.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, because this action is brought under Title VII and Section 1981.

8. This Court has supplemental jurisdiction over Plaintiff's TCHRA claims under 28 U.S.C. § 1367(a) because the TCHRA claims arise from a common nucleus of operative fact with the federal claims and therefore form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court under 29 U.S.C. § 1391(b)(1) because Defendant's Southwest Operations facility is located in this district. Venue is also proper in this Court under

29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

10. Plaintiff, who alleges claims under Title VII, timely filed a complaint of discrimination with the EEOC on April 7, 2025.

11. On July 16, 2025, Plaintiff received his Notice of Right to Sue letter from the EEOC for the Title VII claims alleged herein, and he has timely filed this Complaint.

## STATEMENT OF FACTS

12. Around April 2022, Plaintiff first started working for Defendant in their Logistics & Shipping Department as a Bagger. In this position, he was responsible for using hydraulic pumps to expand pipes and ensuring that pipes would not crack during shipping.

13. Throughout his employment, Plaintiff has been subjected to racial harassment, including racial slurs and comments, discriminatory conduct and disparate treatment by both coworkers and supervisors.

14. Plaintiff heard White coworker Joel Richards ("Richards") regularly use the word "nigger" at work. Richards appeared particularly comfortable using the word when he was around Keaton Cox ("Cox"), a White coworker, and Rhett Powell ("Powell"), a White supervisor, because Powell never told Richards to stop. These racial slurs typically occurred in the shipping yard or while employees were on breaks.

15. As supervisor, Powell had the authority to give Plaintiff job assignments, set Plaintiff's schedule, discipline Plaintiff (up to and including termination), and impact Plaintiff's pay rate. Powell also had the power to hire employees like Plaintiff.

16. Plaintiff also heard Richards refer to Black employees as "Blackies."

17. Around early August 2022, Plaintiff saw Richards and Cox throw a rope tied in the manner of a hangman's noose over his Black coworker, Jawan Daniels ("Mr. Daniels"), and exclaim, "You got you one, boy."

18. Mr. Daniels complained about the hangman's noose, and shortly after that, Defendant terminated him. After that, Plaintiff was the only Black employee remaining on his work crew.

19. Plaintiff spoke with human resources ("HR") representative Brett Uribe ("Uribe") and reported that he had witnessed the hangman's noose altercation. Plaintiff also reported to Uribe that Richards used racial slurs like "nigger" and "Blackie" while in the workplace. Uribe did not take remedial measures in response to Plaintiff's complaint. Instead, Uribe implied that Plaintiff could lose his job if he sided with Mr. Daniels, and that it would be hard for Plaintiff to find a job anywhere else. Threatened with the loss of his employment and income, Plaintiff felt intimidated and told Uribe that he did not see the hangman's noose incident, even though he did see it.

20. Around March 2024, Defendant's supervisor Shannon Surman ("Surman"), who is White, asked Plaintiff if he still talked to Mr. Daniels. Plaintiff said yes. As a supervisor, Surman has the authority to hire employees like Plaintiff, discipline Plaintiff (up to and including termination), assign him job duties, and set his schedule and pay rate. Indeed, in 2023, Surman authorized raises for White employees but refused to authorize a raise for Plaintiff that year.

21. The following Monday after Plaintiff's conversation with Surman, Defendant terminated Plaintiff. But then, Defendant reinstated him the next day. When reinstating him, human resources representative Kathy (LNU) told Plaintiff something like: "be careful about who you associate yourself with."

22. Around October or November 2024, Defendant's Supervisor Powell made a racist joke to Plaintiff, that was something to the effect of: How many policemen does it take to change a lightbulb? None, because they just beat the room for being Black. Plaintiff, the only Black employee on his crew, stood there shocked and offended. He stared, with a blank face, as Powell laughed.

23. From October through December 2024, on at least four occasions, Defendant's Supervisor Surman made racial comments to Plaintiff about how he sounded "ghetto" or looked like a "hood rat". At the time, Plaintiff was the only Black man on his work crew.

24. On March 13, 2025, Plaintiff asked coworker John to contact Surman and ask for additional help in their work area because the work area was understaffed. John called Surman over speakerphone, and as the phone connected, Plaintiff remarked something like: I don't like feeling like a modern-day slave. In response, Surman said something like: Who's that, Dre [Plaintiff]? Well, he better get used to it.

25. On March 21, 2025, Surman gave Plaintiff and White coworkers Cohen Watson ("Watson") and Cameron Spradlin ("Spradlin") a disciplinary write-up for allegedly taking a lunch that was three minutes too long. When the three men returned from lunch, Surman told Spradlin and Watson something like: lay with dogs, catch fleas. This comment both disparaged Plaintiff and punished Spradlin and Watson for associating with him.

26. On March 26, 2025, Plaintiff opened his work locker to find a hangman's noose hanging from a hook, racial slurs painted on the inside, and his jacket defaced with paint. Specifically, the left and right sides of the locker said "Nigger", and the back panel of the locker said, "Fuck U Nigger. " This work locker was assigned specifically to Plaintiff and his name was on the locker. He was the only employee who was assigned to use this locker in the facility:



27.     Plaintiff was horrified. He immediately took a picture of the hangman's noose and racial slur graffiti and showed it to Amber Duckworth in human resources. He also showed it to manager Justin Bowerman ("Bowerman"). Bowerman attempted to downplay the situation and asked Plaintiff if he was sure that it was a hangman's noose.

28.     Throughout his employment, Plaintiff has been forced to endure racially derogatory comments, racial slurs and a hangman's noose (an explicit threat of deadly racial violence). Defendant's supervisors and managers allowed a racially hostile work environment to fester for years. Plaintiff's coworkers and supervisors used the word "nigger" and made other racial

comments and slurs in the workplace. Plaintiff was directly threatened when a hangman's noose was put inside his assigned work locker with the words "Nigger" and "Fuck U Nigger." Previously, when White employees threw a hangman's noose on Mr. Daniels, the company swept the incident under the rug and threatened Plaintiff's job when he corroborated Mr. Daniels' account. In response to employee complaints about the racial harassment, Defendant failed or refused to take prompt effective remedial measures. Defendant has failed to prevent or correct racial discrimination and harassment at its Southwest Operations facility in Paris, Texas.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Title VII
### (Racially Hostile Work Environment)

29. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

30. Plaintiff was subjected to unwelcome harassment from his coworkers and supervisors based on his race, such as the use of the word "nigger", "Blackie", and multiple instances involving a hangman's noose. The harassment was severe or pervasive and created an abusive working environment. Indeed, Plaintiff has been deeply offended, threatened and terrified by these incidents.

31. Defendant knew about the harassment because (a) Plaintiff complained to the human resources department about the incidents, (b) racial comments were made out in the open in the workplace, and (c) some of the harassing comments came from White supervisors Surman and Powell.

32. Defendant failed to implement prompt and effective corrective action. Indeed, when Plaintiff complained about the first noose incident and racial slurs, Defendant intimidated him into retracting his statement.

33. The conduct alleged herein constitutes racial harassment in violation of Title VII.

## SECOND CAUSE OF ACTION
### Section 1981
**(Racially Hostile Work Environment)**

34. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

35. The conduct alleged herein constitutes racial harassment in violation of Section 1981.

## THIRD CAUSE OF ACTION
### Texas Commission on Human Rights Act
**(Racially Hostile Work Environment)**

36. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

37. The conduct alleged herein constitutes racial harassment in violation of the TCHRA.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiff demands judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII; Section 1981, and the TCHRA;

B. All damages which Plaintiff has sustained because of Defendant's conduct, including compensatory damages and other economic damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

E. Pre- and post- judgment as provided by law; and

F. Granting Plaintiff other and further relief as this Court finds necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated:     Garden City, New York
           October 10, 2025            Respectfully Submitted,

/s/ James Vagnini
James Vagnini [*pro hac vice forthcoming*]
Brendan Carman [*pro hac vice forthcoming*]
Suzanne M. Anderson [Texas Bar No. 14009470]
**Valli Kane & Vagnini LLP**
600 Old Country Road, Ste. 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)
jav@vkv.law
bcarman@vkv.law
sanderson@vkvlawyers.com

/s/ Jay D. Ellwanger
Jay D. Ellwanger
Texas Bar No. 24036522
**Ellwanger Henderson LLLP**
11149 Research Blvd. Ste. 100
Austin, Texas 78759
737-808-2260 (phone)
jellwanger@equlrights.law

*Attorneys for Plaintiff*